
FILED
2012 Nov-02 PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **BILLY W. HOOIE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:11-cv-03472-AKK** |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Billy Hooie ("Hooie") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Hooie filed an application for Disability Insurance Benefits under Title II on August 8, 2007, (R. 49), initially alleging a disability onset date of May 31, 2006 (R. 69-71) but later amending this date to November 5, 2007, (R. 31-47), from spinal stenosis (back pain) and depression (R. 36-37, 40, 130). On November 13,

2007, the SSA denied Hooie's application, (R. 51), and he requested a hearing before the ALJ, which occurred on November 20, 2009, (R. 31-47). On December 4, 2009, the ALJ denied Hooie's claims (R. 9-25), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Hooie then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1. *See also* doc. 9, at 2.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

>(4)   whether the claimant is unable to perform his or her past work; and
>
>(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

>The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

>While both the regulations and the *Hand* standard require objective

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

>medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

>It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

As a threshold matter, the court notes that the ALJ properly applied the five step analysis.  Initially, the ALJ determined that Hooie had not engaged in substantial gainful activity since January 5, 2007, and therefore met Step One.  (R. 14).  The ALJ also acknowledged that Hooie's severe impairments of "history of two back surgeries (1985 and 2002), degenerative disk disease of the lumbar spine, hypertension, and gastroesophageal reflux disease" met Step Two.  *Id*.  The ALJ proceeded to the next step and found that Hooie did not satisfy Step Three since his impairments or combination of impairments neither met nor equaled the requirements for any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 16).  Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Hooie has the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and the Dictionary of Occupational Titles, that is he can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, but with the exception he should not climb ropes, ladders, or scaffolding and should not work at unprotected heights or around dangerous moving, unguarded machinery.

(R. 16).  Further, the ALJ held that Hooie could perform his past relevant work as an elementary teacher and substitute teacher/teacher's aid because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (R. 21).  After the ALJ answered Step Four in the negative, consistent with *McDaniel*, 800 F.2d at 1030, the ALJ

declined to discuss Step Five and determined that Hooie is not disabled. (R. 21). As it relates to the pain standard, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 17).

## V.  Analysis

The court turns now to Hooie's two contentions of error – (1) that the case should be remanded based on a medical report submitted one month after the ALJ released his decision; and (2) that the ALJ's finding that Hooie could perform work at the light level of physical exertion is contrary to the evidence. *See* doc. 9. The court will address each contention in turn.

*A.     Considering Medical Evidence Submitted After the ALJ's Decision*

Hooie's first point of error is based on the Appeals Council's failure to consider medical evidence newly submitted by Hooie. On January 19, 2010, approximately one month after the ALJ rendered an unfavorable decision, rheumatologist Dr. G. Bryan Dewees performed a consultative exam on Hooie. (R.161-168). As part of this exam, Dr. Dewees completed a physical capacities evaluation, clinical assessment of pain, and clinical assessment of weakness and fatigue. *Id*. at 163. Ultimately, Dr. Dewees concluded that

> Mr. Hooie has chronic back pain related to his previous disc surgery and spinal stenosis surgery. He is not able to sit in any one position for

> any length of time. He is not able to stand and walk for any length of time. He is not able to bend, stoop, crawl, climb, or use his lower legs for repetitive motions. To violate these restrictions would cause his arthritic pain to flare.
>
> The above diagnoses are confirmed by his physical examination and the medical information that was sent with him.
>
> I do not see how he could work at any job eight hours a day, 40 hours a week, 50 weeks a year, even if such a job were of a light or sedentary nature.
>
> In other words, I consider him to be totally and permanently disabled by the above-outlined medical problems.

(R. 163). Hooie argues that pursuant to 20 C.F.R. § 404.970(b), "the Appeals Council should have at the very least remanded this case based on Dr. Dewees' report[.]" Doc. 9 at 11. This argument, however, misses the mark.

Section 404.970(b) states that the Appeals Council "shall consider" submitted evidence that is new and material "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). Moreover, after "evaluating the entire record including the new and material evidence submitted[,]" the Appeals Council "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is *contrary to the weight of the evidence currently of record*." *Id.* (emphasis added). In other words, the submission of new and material evidence does not automatically trigger remand; rather, the evidence is considered on remand only if the ALJ's current decision is not supported by substantial evidence – including the new evidence. In determining whether the ALJ's opinion is supported by

substantial evidence, rendering remand unnecessary, the court will discuss the existing evidence and the ALJ's decision in turn.[2]

1. Medical Evidence Presented to the ALJ

Beginning in 1997, Dr. Ferdinand A. Balatico began treating Hooie for a variety of medical problems, including back pain and depression, and which resulted in Dr. Balatico prescribing pain and anti-inflammatory medication. (R. 301-380). After Hooie's alleged onset date, Dr. Balatico examined Hooie a final time on July 10, 2007 because Hooie complained of headaches and neck pain that had spread to the top of his shoulder. *Id.* at 301. On the physical examination portion of the report, Dr. Balatico noted that Hooie was "well developed, well nourished, [and was in] no acute distress[,]" but failed to note any abnormalities after Hooie's lamenectomy and spinal stenosis surgeries. *Id*. at 301-02.

On October 30, 2007, Dr. Marlin D. Gill performed a medical consultative examination on Hooie for the purpose of disability determination. *Id*. at 386. After reviewing the medical history, Dr. Gill performed a brief exam and noted that Hooie's "[g]ait is normal[,] [h]e walks unassisted and uses no devices . . .[h]e uses his hands and arms normally with no limitations and demonstrates full range of motion in the joints[,]" and that "[t]he back looks normal." *Id*. Moreover, Dr.

---

[2] Several medical exhibits were added to the record prior to Hooie amending his onset date. The court will not discuss these records and will focus instead on the medical history starting with the alleged onset date of January 5, 2007. Additionally, some medical evidence is focused on Hooie's alleged impairment of depression, but Hooie does not challenge the ALJ's finding that his depression was not severe. Therefore, the court also will not discuss that medical evidence.

Gill noted that Hooie "complains of pain with lumbar movement" but "[t]here is no tenderness to palpitation" and that "[f]rom the standing position, he can squat all the way down and come back up again holding onto the table for balance. . . [and] can walk on his tiptoes and heels." *Id*. Ultimately, Dr. Gill diagnosed Hooie with low back pain and a history of degenerative disc disease and facet arthritis. *Id*.

Next, DDS Examiner Winifred Hill performed a Physical Residual Functional Capacity ("RFC") Assessment on Hooie on November 8, 2007. (R. 388). Based on the evidence in Hooie's file, Hill determined that Hooie could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk with normal breaks for a total of about six hours a day, sit with normal breaks for a total of about six hours a day, and that Hooie's ability to push and pull items was unlimited except as previously stated. *Id*. at 389. In explaining how the evidence of record supported this conclusion, Hill noted that although an MRI revealed that Hooie has post-surgery scarring, degenerative disc disease, "L2-L3 left lateral recessed stenosis and a small disc protrusion and a free fragment," *id*. at 393, previous examinations consistently note that Hooie's back looked normal, that Hooie can walk normally without assistance, can bend and squat fully, and demonstrated full range of motion in the joints. *Id*. at 389 Moreover, Hill found that Hooie's "statements about symptoms and functional limitations are only partially credible as the severity alleged is partially consistent with the objective findings from the evidence in the file." *Id*. at 393.

Finally, Hooie was examined by Dr. Nancy Neighbors on April 6, 2009 for problems related to cervicalgia and "other malaise and fatigue."[3] (R.425). During the general exam, Dr. Neighbors noted "muscle spasm in neck and shoulders, lower T-spine-tender to palpation, OP-postnasal drainage, C-Spine and shoulder tenderness, muscle spasm to palpation, limited range of motion, and pain to palpation Rt paraspinous muscles area." *Id*. Ultimately, Dr. Neighbors diagnosed Hooie with unspecified chest pain, gastroesophageal reflux disease, benign localized hyperplasia of prostate NOS, and hypertension NOS. *Id*. Notably, Dr. Neighbors failed to make any further notes or diagnoses regarding Hooie's alleged back pain.

      2.     <u>The ALJ's Decision</u>

The ALJ reviewed this evidence and found that "the medical evidence from January 2007 forward is inconsistent with disability." (R.18). To support this conclusion, the ALJ explained that Hooie's treating physician, Dr. Balatico, and primary physician, Dr. Neighbors, noted no musculoskeletal abnormality after their examinations. Moreover, the ALJ noted that these doctors only saw Hooie a few times during the three year period in question, and that many of the visits were for issues unrelated to back pain. *Id*. Critically, the ALJ pointed out that even when Hooie visited these doctors to complain about back pain, Hooie failed to follow up for several months at a time, if at all – suggesting the pain was not as

---

[3] Hooie identified Dr. Neighbors as his primary physician.

severe as Hooie asserts. *Id*. The ALJ also noted that the report of consultative examiner Dr. Gill is consistent with the reports of Hooie's treating and primary physicians but contrary to Hooie's allegations of constant disabling pain and need for an assistive device. *Id*. Additionally, the ALJ found that Hooie's own "report[] [about] living with a friend[,] . . . do[ing] light housekeeping such as dusting and straightening up[,] . . . cook[ing], wash[ing] dishes, shop[ping] for groceries[,] tak[ing] care of his own personal needs. . .[and] driv[ing][,]" undermined Hooie's contention that he suffered from debilitating pain. *Id*.

The ALJ further explained that Hooie's "lack of use of medication does not bolster his credibility with respect to the severity or frequency of his pain and other subjective complaints. Furthermore, when he does use medication, the evidence is consistent with good benefit." *Id*. at 19. Specifically, Hooie alleged that he was in daily "unrelenting disabling pain," but "he does not use pain medication on a routine, daily basis" and "does not take the medications if he can avoid it." *Id*. Ultimately, the ALJ found that "[t]he record does not contain any opinions from treating or examining physicians indicating that [Hooie] is disabled or even has limitations greater than those determined [by the ALJ]" and also that Hooie's "allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date" when Hooie was able to continue work until retirement. *Id*. at 20.

The court notes that the evidence fully supports the ALJ's decision and, further, that Dr. Dewees' contrary conclusion is inconsistent with the other

medical evidence. In other words, even if Dr. Dewees report is included in the record, substantial evidence would still support the ALJ's decision that Hooie is not disabled. Therefore, the court declines to remand the decision based on this new report.

B.   *Residual Functional Capacity to Perform Light Work*

Hooie argues next that, "it would not have been reasonable to think that he could perform work above the sedentary level of physical exertion even without Dr. Dewees' report" and therefore the ALJ should have found him disabled pursuant to the Medical Vocational Guidelines at 20 CFR, Part 404, Subpart P Appendix II. Doc. 9 at 9. Accordingly, he concludes that the ALJ's decision is not based upon substantial evidence. *Id.* The court finds Hooie's contention unpersuasive because the ALJ explicitly "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (R. 16). The ALJ also "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p" before concluding that Hooie's RFC was limited to light work instead of sedentary work. *Id*. As discussed in section A, *supra*, the ALJ's findings are supported by substantial evidence, despite Hooie's subjective allegations regarding the intensity, persistence, and limiting effects of his impairments.

Because the ALJ's finding that Hooie had the RFC to perform light work is

supported by substantial evidence, the regulation for determining disability for persons limited to sedentary work cited by Hooie, 20 C.F.R. Pt. 404, Subpt. P, Appendix II § 201.00, is inapplicable. Instead, § 202.00 applies, which states that Hooie is only disabled if he "can no longer perform vocationally relevant past work" or has only "skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within [his] functional capacity." 20 C.F.R. Pt. 404, Subpt. P, Appendix II § 202.00(c). However, vocational expert Melissa Neel testified that Hooie's RFC still allows for the performance of his past work as an elementary school teacher and substitute teacher. (R. 45). Therefore, the ALJ correctly concluded that Hooie was not disabled under the applicable regulation.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Hooie is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The final decision of the Commissioner is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

**DONE** the 2nd day of November, 2012.

                                                         _____
                                                         **ABDUL K. KALLON**
                                                         UNITED STATES DISTRICT JUDGE